IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-160-FL

| | | |
|---|---|---|
| ZIPTRONIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OSTENDO TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on those parts of plaintiff and counterdefendant Ziptronix, Inc.'s motion for partial summary judgment (DE # 24), and on defendant and counterclaimant Ostendo Technologies, Inc.'s motion to seal (DE # 43) which the court took under advisement after hearing held on February 28, 2013. The motions have been fully briefed, and the issues raised are ripe for adjudication. For reasons set forth below, the court GRANTS in remaining part plaintiff's motion for partial summary judgment and DENIES in remaining part defendant's motion to seal.

**STATEMENT OF THE CASE**

On March 8, 2011, plaintiff initiated this action by filing complaint in Wake County Superior Court. Defendant removed the action to this court on April 7, 2011. In its complaint, plaintiff, which is in the business of, among other things, using proprietary technology to bond semiconductor wafers, asserted a claim for breach of contract, an alternative claim for unjust enrichment, and a claim for breach of the implied duty of good faith and fair dealing. These claims arise out of defendant's refusal to pay plaintiff for wafer processing and bonding services on seven invoices

1

which were issued under four of the over twenty (20) contracts which the parties entered into over an approximately two-year business relationship.

Defendant, a California company primarily in the business of developing display technologies, answered denying liability and counterclaiming for breach of contract based upon plaintiff's failed efforts to fully bond defendant's semiconductor wafers. Defendant averred it was damaged by plaintiff's alleged breach in an amount of at least $300,000.00. On April 12, 2011, defendant filed an amended counterclaim alleging it had been damaged in an amount of at least $800,000.00.

On November 10, 2011, plaintiff filed an amended complaint, re-asserting its previous claims and adding an alternative claim for reformation of contract. Defendant responded with an amended answer denying liability and a second amended counterclaim which added an alternative claim for unjust enrichment to its claim for breach of contract.

On March 23, 2012, plaintiff filed a motion for partial summary judgment, arguing that the bulk of defendant's counterclaim damages are unavailable to defendant as a matter of law. Plaintiff also maintained that defendant's alternative claim for unjust enrichment should be dismissed. Defendant responded in opposition. One month after filing their response – and after the deadline for amending the pleadings had passed – on May 25, 2012, defendant filed an opposed motion for leave to file a third amended counterclaim to include a claim for fraud.

On February 28, 2013, the court held hearing on these motions, together with two of defendant's motions to seal, receiving arguments from the parties regarding all motions. The court denied defendant's motion to amend, and granted in part and denied in part one motion to seal. As to the other motion to seal, the court granted it in part, denied it in part, and held in abeyance ruling

2

on remaining part where the parties were required to confer and consider more particularly propriety of sealing of certain information in light of disclosures already made. With respect to plaintiff's motion for partial summary judgment, the court denied it in that part where plaintiff urged that defendant's unjust enrichment claim be dismissed. The court requested supplemental briefing from the parties with respect to other, remaining parts of plaintiff's motion to be decided.

The court received defendant's supplemental response on March 7, 2013, and plaintiff's supplemental reply on March 14, 2013. Also on March 14, 2013, the parties filed stipulations in which, among other things, defendant agreed it no longer was making any claims with respect to certain contracts. Finally, on that same day the parties filed a status report relating to the status of the document upon which the court held in abeyance ruling on motion to seal.

## STATEMENT OF UNDISPUTED FACTS

In the fall of 2008, defendant was awarded a contract with Rockwell Collins, a prime contractor to the federal government. This contract required defendant to do work related to the production of emissive micro-displays ("EMD"). Defendant's contract (the "phase one contract") was for the first phase of a potentially larger project ("the EMD project").

EMDs contain a component known as a quantum photonic imager ("QPI"). Creation of a QPI involves bonding a silicon ("CMOS") wafer to a gallium nitride wafer. In or around October, 2008, defendant contacted plaintiff to inquire about its ability to bond silicon and gallium nitride wafers. The parties' discussions resulted in a purchase order ("PO") in October, 2008, for a trial run wherein plaintiff would attempt to bond a blank CMOS wafer to a blank gallium nitride wafer for defendant. The parties negotiated terms and conditions which included the following limitation of liability provision:

3

> NEITHER PARTY SHALL BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES EVEN IF THE PARTY IS MADE AWARE OF THE POSSIBILITY OF SUCH DAMAGES. NOR SHALL EITHER PARTY'S LIABILITY EXCEED THE AMOUNT CUSTOMER PAID TO ZIPTRONIX UNDER THIS AGREEMENT.

Pl.'s Ex. 7, E-mail from Gianni (Oct. 16, 2008) at Ziptronix 004118 ¶ 11. The terms and conditions also disclaimed any warranty for the wafers plaintiff attempted to bond:

> SINCE THE ZIBOND OR DBI® WAFERS MAY BE CONSTRUCTED FROM WAFERS SUPPLIED BY CUSTOMER, AND SINCE THE ZIBOND OR DBI® TECHNOLOGY THAT WILL BE USED TO PREPARE THE DBI® WAFERS IS STILL IN A PRE-PRODUCTION STAGE, THE ZIBOND OR DBI® WAFERS TO BE DELIVERED HEREUNDER ARE FURNISHED "AS IS." AND ZIPTRONIX MAKES NO REPRESENTATION THAT IT WILL BE ABLE TO COMPLETE THE BONDING PROCESS OR DELIVER ZIBOND OR DBI® WAFERS. ZIPTRONIX SHALL USE COMMERCIALLY REASONABLE EFFORTS TO COMPLETE THE BONDING WORK CONTEMPLATED BY THIS AGREEMENT. ZIPTRONIX EXPRESSLY EXCLUDES AND DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE OR PROCESS.

Id. at ¶ 10.

Plaintiff had moderate success in bonding the wafers. This prompted further negotiations between the parties regarding further bonding services by plaintiff. After several months of negotiations, in the summer of 2009, the parties agreed upon terms and conditions ("T&Cs") and a statement of work.[1] The T&Cs included the above limitation of liability and disclaimer of warranty. Plaintiff's bonding efforts commenced with PO 2009-192, initially issued for the bonding of ten (10) wafers. The parties continued to work together through 2009 as memorialized by a total of seven change orders ("CO") to the 2009 PO – PO 2009-192 CO1-7 – which covered all of plaintiff's work

---

[1] Defendant claims that the T&Cs were to govern the parties interactions "at the genesis of their relationship or until the parties better understood the nature of the work to be performed." Def.'s Resp. Opp'n. Summ. J. 4 (emphasis in original). Plaintiff maintains that these were the T&Cs "with respect to the next purchase order," Pl.'s Mem. Supp. Summ. J. 6, which were continually re-applied as the T&Cs for subsequent POs. Id. at 7, 9.

4

through wafer 23.

During 2009 the parties agreed to change the payment terms set forth in the T&Cs. This change applied as early as PO 2009-192 CO3. Initially the parties agreed to a payment structure where one-third of the total amount owed was due at delivery of the wafers to plaintiff, one-third at the coring of the wafers, and one-third prior to plaintiff's shipping the bonded wafers to defendant. The parties now agreed to a structure where half of the amount owed would be billed upon the wafers being returned from coring or bonding and half upon delivery. These new payment terms, however, were not incorporated into the text of the T&Cs.

While plaintiff was not successful in completely bonding defendant's wafers throughout the course of 2009, defendant was able to satisfy its deliverables under the phase one contract, and was awarded a contract for a second phase (the "phase two contract") calling for further refinement and development of the QPI technology. Thus defendant continued to work with plaintiff throughout 2010, as memorialized by a series of 2010 POs: 2010-017, 2010-072, 2010-116, 2010-148, 2010-199, 2010-248, 2010-284 CO1, 2010-288, 2010-304, 2010-316 CO1, and 2010-324. Plaintiff's attempts to bond defendant's wafers remained unsuccessful. According to defendant, plaintiff did not even reach the level of success it achieved in 2009 with wafer 21, which defendant's representatives testified represented plaintiff's best effort. Plaintiff claims its inability to successfully bond defendant's wafers was due to issues with the material provided by defendant.

Due to plaintiff's failure to successfully bond defendant's wafers, in late 2010, defendant stopped paying plaintiff's invoices, and then sent plaintiff a notice of intent to suspend their relationship in January of 2011. Plaintiff filed suit seeking to collect upon those invoices, claiming that it was entitled to payment for work completed. Defendant removed to this court,

5

counterclaiming for damages based upon plaintiff's unsuccessful bonding efforts.[2] Plaintiff – which denies all liability – filed the instant motion for partial summary judgment claiming there are triable issues as to its liability on only six of the parties' POs, and further that of those six POs, there is no genuine issue of material fact that five are governed by the limitation of liability provision in the T&Cs, limiting plaintiff's potential liability on those five POs to direct damages.

## COURT'S DISCUSSION

A.   Motion for Partial Summary Judgment

  1.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that

---

[2] The exact scope of damages sought by defendant is not entirely clear. Defendant's theory of plaintiff's liability has shifted throughout this litigation, as discussed more in the text of this order. Defendant also has repeatedly changed its calculation of its damages. In its initial counterclaim, it maintained it was damaged in an amount of at least $300,000.00. In its first amended counterclaim, defendant asserted damages of at least $800,000.00, which figure it continued to allege in its second amended counterclaim. The alleged damages continued to increase throughout discovery to $3,006,373.00 in defendant's initial disclosures, to $3,053,523.00 in defendant's response to plaintiff's first set of interrogatories, to $4,627,629.00 in defendant's supplemental responses to plaintiff's first set of interrogatories, and then to $4,850,968.36.00 as expressed by defendant's Vice President of Finance and Administration Michael Zaparyniuk in his deposition. In its response to plaintiff's motion for partial summary judgment, defendant's calculation of damages fell to $2,838,199.00. Most recently, in light of defendant's more limited claims it has informed the court that it will produce a second supplemental response to plaintiff's first set of interrogatories setting for its latest calculation of damages. At this time the court has not received notice of what these figures are.

6

there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).[3] The question is whether viewing the evidence and drawing all reasonable inferences from that evidence in a light most favorable to the nonmoving party, a reasonable trier of fact could find in favor of the nonmoving party. Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 164-65 (4th Cir. 2012).

2. Analysis

    a. The contracts at issue

Plaintiff claims that, as a matter of law, defendant cannot claim breach of any contracts except POs 2010-072, 2010-148, 2010-248, 2010-288, 2010-304, and 2010-316 CO1. Defendant contends that it may seek recovery on those contracts/POs which were the subject of plaintiff's efforts to bond QPI wafers 22 to 37.[4] Defendant no longer asserts any claims as to any earlier POs where by stipulation filed March 14, 2013, defendant has agreed it no longer is asserting any claims with respect to the following contracts/POs: 2008-295, 2009-192, 2009-192CO1, 2009-192CO2,

---

[3] In asserting that a fact cannot genuinely be disputed, a party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court is required only to consider those materials specifically cited, although it may consider other materials in the record in its discretion. Fed. R. Civ. P. 56(c)(3).

[4] Defendant's current theory as to how plaintiff allegedly breached these contracts is not a model of clarity. Defendant has espoused shifting theories throughout this litigation, claiming breach of different POs. See e.g., Pl.'s Ex. 4, Lutje Dep. 104:23-105:25 ("Our complaint is that we didn't receive Ziptronix's best effort. We have established a best effort, best result in Wafers 20 and 21. From 24 on we did not come close to achieving those results."); Def.'s Resp. Opp'n. Summ. J. 2 (plaintiff's failure to successfully bond defendant's wafers constituted a breach of a purported single over-arching contract between the parties which subsumed *all* of the POs issued during the parties' relationship); Def.'s Supplemental Resp. Opp'n. Summ. J. 10 (Agreeing the parties did not have one contract, but many, and merely stating that "Ostendo contends, in relevant part, that Ziptronix failed to satisfy the 'best efforts' standard to adequately bond QPI wafers 22-37.").

7

2009-192CO3, 2009-192CO4, and 2009-192CO5.[5]

As an initial matter, the court notes that all work on wafers 22 and 23 were done pursuant to PO 2009-192 CO5. See Def.'s Ex. 34-2, PO 2010-192 CO5 at Ziptronix 12295. Thus as defendant has stipulated it is not suing on PO 2009-192 CO5, it cannot recover damages on wafers 22 and 23. Additionally, the court takes note of the fact that there can be no damages based on POs 2009-192 CO6 and CO7 because PO 2010-192 CO7 cancelled the work ordered by CO6. Thus defendant asserts no valid claims with respect to any of the 2009 POs.[6]

As defendant has stipulated that it is not claiming breach on the 2008 PO, and has no valid claims regarding the 2009 POs, the court turns to the ten (10) remaining 2010 POs defendant appears to claim are at issue. These are comprised of POs 2010-017, 2010-072, 2010-116, 2010-148, 2010-248, 2010-284 CO1, 2010-288, 2010-304, 2010-316 CO1, and 2010-324.[7]

Of these ten (10) POs, four are not genuinely in dispute because defendant's officers testified defendant's complaint was with plaintiff's *bonding efforts* from wafers 24 on, and that defendant had no problem with plaintiff's other services. See Pl.'s Ex. 5, El-Ghoroury Dep. 54:20-55:24, 57:14-18

---

[5] Matters were complicated where defendant's supplemental response in opposition to the motion for summary contained a list of what defendant took to be the breached contracts which, in addition to those contracts listed as not at issue in the parties' March 14, 2013, stipulation, did not include POs 2010-017, 2010-199, and 2010-304, and 2010-316. Whether the mismatch between the stipulation and defendant's supplemental response is due to defendant's inadvertent error or to a purposeful further narrowing of claims is not clear. Where the stipulation excluded fewer contracts, for purposes of consideration of this motion for summary judgment, the court is guided by the stipulation filed plus defendant's statement at February 28, 2013, hearing that PO 2010-199 is not in dispute. It is also the court's understanding that PO 2010-316 is not at issue where it was superseded by 2010-316CO1. The court may have cause to return to this issue as the case proceeds to trial.

[6] This conclusion is buttressed by the deposition testimony of defendant's officers. See e.g., Pl.'s Ex. 4, Lutje Dep. 104:23-105:25 ("Our complaint is that we didn't receive Ziptronix's best effort. We have established a best effort, best result in Wafers 20 and 21. *From 24 on* we did not come close to achieving those results.") (emphasis added).

[7] Both parties appear to agree that certain of the 2010 POs are not at issue. Defendant asserted through counsel at hearing that it had no claims with respect to PO 2010-199, which apparently was related to a separate effort. In addition, POs 2010-284 and 2010-316 have been superseded by their respective change orders.

8

("Q. Ostendo's complaint in this case with respect to the bonding work done by Ziptronix is the failure to replicate with Wafers 24 through 37 the level of bonding performance that was achieved with Wafers 20 and 21; is that correct? A. Yeah, that's pretty much [it] in a nutshell."); Pl.'s Reply Ex. 4, Lutje Dep. 95:19-96:7, 97:11-15 (no problems with plaintiff's "short loop evaluation services" ordered by PO 2010-017); Pl.'s Ex. 4, Lutje Dep. 99:2-17, 104:1-10 (no problems with plaintiff's CMOS processing services ordered by POs 2010-116 and 2010-324); see also Pl.'s Ex. 16, PO 2010-284 CO1, at Ziptronix002393 (just like POs 2010-116 and 324, PO 2010-284 CO1 was only for CMOS wafer processing and no bonding was ordered under that PO).

Defendant's attempt to make claims on a wide range of the 2010 POs despite such testimony is unavailing. It the clear law of this circuit that a party cannot create a genuine issue of material fact simply by contradicting its past deposition testimony. See Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010) ("it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct."); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999) (a party cannot create a triable issue "simply by contradicting deposition testimony with a subsequent affidavit"). Similarly, defendant cannot create a genuine question of fact as to plaintiff's performance on contracts for non-bonding work by now arguing that plaintiff somehow breached those arguments where defendant's key witnesses testified plaintiff's performance was satisfactory. The only contracts genuinely at issue are POs 2010-072, 2010-148, 2010-248, 2010-288, 2010-304, and 2010-316 CO1 ("the disputed POs"), corresponding to the bonding efforts for wafers 24 to 37.

        b.      Applicability of the limitation of liability to the contracts at issue

The court turns its attention to a consideration of the disputed POs, and, more particularly,

9

to which of those, if any, plaintiff's T&Cs (with their limitation of liability provision) apply.[8] Plaintiff claims it is entitled to summary judgment that the T&Cs apply to all of the disputed POs except 2010-316 CO1. Defendant urges that the T&Cs do not apply to any of these six POs except 2010-304. In order to decide this question, the court looks to the contracts, keeping in mind that "[t]o incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, as much as if it were set out at length therein." Schenkel & Shultz, Inc. v. Hermon F. Fox & Associates, P.C., 362 N.C. 269, 273, 658 S.E.2d 918, 921-22 (2008) (quoting Booker v. Everhart, 294 N.C. 146, 152, 240 S.E.2d 360, 363 (1978)).

i. POs 2010-072 and 2010-148

While neither of these POs expressly mention the T&Cs on their face, both incorporate the terms of plaintiff's quote 030210. PO 2010-072 states that the work is being done "per Ziptronix quote ZIP030210." Pl.'s Ex. 12, PO 2010-072 at O02581. PO 2010-148 says the effort is authorized "[a]s quoted by ZIP 030210." Pl.'s Ex. 14, PO 2010-148 at O02545. Plaintiff's quote 030210 states that "all work is governed by the terms and conditions attached to this form, unless otherwise stated" and attached to the quote are the T&Cs. Def.'s Ex. 15, E-mail from Lutje (Apr. 23, 2010) at O06905-08. Thus where both of these POs incorporate the T&Cs by reference, the T&Cs govern these POs. See Schenkel, 362 N.C. at 273.

---

[8] The enforceability of this provision is not disputed. North Carolina law allows enforcement of limitation of liability clauses unless the parties lack even "relatively equal bargaining power." Jordan v. Eastern Transit & Storage Co., 266 N.C. 156, 162, 146 S.E.2d 43, 48 (1966). The parties only disagree as to which transactions this enforceable clause applies.

10

ii. POs 2010-248 and 2010-288

Like POs 2010-072 and 2010-148, neither PO 2010-248 nor PO 2010-288 mention the T&Cs on their face. However, both provide that the work is to be performed "as quoted by ZIP 100810." Pl.'s Ex. 15, PO 2010-248 at O02534; Pl.'s Ex. 17, PO 2010-288 at O05955. Like quote 030210, quote 100810 provides that "all work is governed by the terms and conditions attached to this form, unless otherwise stated." Pl.'s Ex. 23, Ziptronix quote 100810 at O00437. Unlike with quote 030210, plaintiff failed to attach the terms and conditions to its quote 100810. This failure, however, is not fatal to the incorporation by reference. Cf. In re Estate of Norton, 330 N.C. 378, 384, 410 S.E.2d 484, 487 (1991) (Discussing the standard for proper incorporation by reference in a will, and holding that such incorporation is effective where there is (1) reliable evidence that the documents references existed at the time of the codicil incorporating them and (2) the reference was "clear and distinct" such that there was "full assurance" the document was meant to be incorporated). See also Williams Int'l Co. New W. Mach. Tool Corp., No. 09-12516, 2010 WL 331714 at *7-8 (E.D. Mich. Jan. 22, 2010) (where a PO which referenced "Standard Commercial Terms (CT) 100 attached hereto" but failed to actually attach those terms, they were still incorporated by reference).

The fact that Ziptronix quote 100810 referred to "the terms and conditions attached" and did not name a specific set of terms and conditions does not destroy the incorporation. As defendant itself makes clear in its response in opposition to plaintiff's motion for partial summary judgment, there was no ambiguity as to what terms and conditions were being referenced. See Def.'s Resp. Opp'n. at 20 ("Ziptronix issued [its] quotation, Zip 100810, *with express reference to the Ziptronix Terms.*") (emphasis added). Moreover, the T&Cs had been attached to prior quotations which used identical language, and were the only terms and conditions that the parties had thus far used in the

11

venture. There was no ambiguity as to which terms plaintiff was incorporating in quote 100810. Therefore the limitation of liability provision was incorporated into POs 2010-248 and 2010-288 by reference also.

      iii.  PO 2010-304

Defendant agrees that the T&Cs governed purchase order PO 2010-304, which expressly provides that "Terms and Conditions (Modified June 27, 2009) shall apply." Pl.'s Ex. 18, PO 2010-304 at O02525. Thus the limitation of liability provision applies to this PO.

      iv.  PO 2010-316 CO1

Plaintiff agrees that, for purposes of this motion for partial summary judgment, there are genuine issues of material fact as to whether or not the T&Cs control PO 2010-316 CO1. While this PO incorporates the T&Cs by reference through Ziptronix quote 100810, it also states at the bottom of each page that "[t]he Ostendo Technologies, Inc. General Terms and Conditions F-0034 shall apply to the order." Pl.'s Ex. 19, PO 2010-316 CO1 at O02506-07. In light of these conflicting clauses plaintiff concedes that there are genuine issues of material fact as to which terms applied to this PO. In sum, there is no genuine issue of material fact that the T&Cs apply to all of the disputed POs save PO 2010-316 CO1.

      v.  The parties' course of dealing

Defendant argues that the parties' course of dealing demonstrates the T&Cs with their limitation of liability provision ceased to govern the parties' agreements – with a few clear exceptions – after PO 2009-192 CO2, when the parties agreed to change the payment terms. It is true that a "course of dealing between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may

12

supplement or qualify the terms of the agreement." N.C. Gen. Stat. § 25-1-303(d). It is clear, however, that a party cannot "obtain an interpretation contrary to the express language of . . . [a] contract" by asserting it had a contrary intention or did not mean what it said. Snyder v. Freeman, 300 N.C. 204, 215, 266 S.E.2d 593, 600 (1980) (citing Fidelity & Casualty Co. of N.Y. v. Nello L. Teer Co., 250 N.C. 547, 109 S.E.2d 171 (1959)).

Defendant first urges that the parties' failure to memorialize these changes to the payment terms in the T&Cs despite their clear agreement thereto evinces an intent to abandon the T&Cs entirely. Defendant cites no law, nor is the court aware of any, which supports its proposition that a change to payment terms completely nullifies all other aspects of an agreement. Furthermore, at no point in time did defendant communicate its intent to plaintiff for the T&Cs to cease applying. Pl.'s Ex. 2, Cowles Dep. 84:12-23, 100:9-12, 101:2-21. Defendant's unexpressed intention alone could not modify the T&Cs agreed to by the parties. See Scarborough v. Adams, 264 N.C. 631, 641, 142 S.E.2d 608, 615 (1965) ("Ordinarily, a valid contract once entered into may not be altered or abrogated except by agreement of the contracting parties."). Thus, where the parties' agreements incorporate the agreed upon Terms and Conditions, defendant's asserting it did not mean what it said in its agreement cannot create an issue to prevent summary judgment. Synder, 300 N.C. at 215.

Defendant also contends that it showed an intent to abandon the T&Cs as it no longer explicitly referenced them on the face of the POs it sent to plaintiff. Thus, defendant contends, these actions create an ambiguity requiring the parties' intent to be determined by a finder of fact. Defendant attempts to support this argument by citing generally to Schenkel. That case involved two contracts: a prime agreement between a contractor and an owner, and a subcontract between the contractor and a subcontractor. The subcontract incorporated at least portions of the prime contract

13

by reference. The North Carolina Supreme Court found there was ambiguity as to whether the incorporation in the subcontract encompassed an indemnity provision in the prime contract, affirming the trial court's denial of judgment as a matter of law that the incorporation included that indemnity provision. See id. at 274.

Schenkel is inapposite here. Defendant, unlike the subcontractor in Schenkel, does not argue an ambiguity about the scope of the incorporation of the T&Cs, rather it argues that the T&Cs were not incorporated at all. This is contrary to the express language of the POs and the quotations which explicitly provide that the T&Cs shall govern the efforts.

Moreover, defendant's internal correspondence belies its assertions of its understanding that the T&Cs ceased applying. Even after the modification of the payment terms, defendant viewed as controlling the T&Cs disclaimer of warranty providing that plaintiff would not guarantee its ability to bond. See Pl.'s Ex. 24, E-mail from Cowles (May 12, 2010) at O06824 ("Should there be some final inspection/acceptance criteria and/or final specification [plaintiff] need[s] to meet? I know previously they would not guarantee any level of bonding. However, they are familiar with our product now and it seems that they should have some responsibility to achieve a minimum amount of bonding."). It also shows defendant viewed the T&Cs as still controlling the parties' transactions as late as February 2011. See, Pl.'s Ex. 25, E-mail from DeMille (Feb. 18, 2011) at O05499 ("I checked the Ts & Cs from Ziptronix and we're required to notify them within 10 days if deliverables are unacceptable otherwise, the deliverables are deemed acceptable.").

Finally, the purchase orders themselves undercut defendant's argument that its failure to include explicit reference to the T&Cs on the face of a PO demonstrated an explicit intent that the T&Cs not govern that PO. Defendant agrees that POs 2009-192 CO2 and 2010-017 were governed

14

by the T&Cs. However, neither of these POs refer to the T&Cs on their faces. Defendant cannot selectively pick and choose where not explicitly referencing the T&Cs demonstrates an intent not to be governed by them. Thus the parties' course of dealing does not evince an intent to abandon the T&Cs or create an ambiguity as to what the parties meant in their contracts.

There is no genuine issue of material fact that the T&Cs, including their limitation of liability, apply to all of the disputed POs except PO 2010-316 CO1. Defendant's recovery for any breach they may show is therefore limited to direct damages on the disputed POs plus any damages that it may show were proximately caused by plaintiff's alleged breach of 2010-316 CO1.

B.   Motion to Seal

On April 30, 2012, defendant filed motion to seal, *inter alia*, an excerpt from the deposition transcript of defendant's CEO, Dr. Hussein El-Ghoroury, lodged at docket entry 40-16. Where the parties' expressed uncertainty as to whether this document should be sealed, the court held ruling thereon in abeyance. By joint report filed March 14, 2013, the parties have informed that court that this excerpt is not appropriate to be sealed. Therefore defendant's motion to seal is denied with respect to this document.

## CONCLUSION

Based upon the foregoing, plaintiff's motion for partial summary judgment (DE # 24) is GRANTED in remaining part, and defendant's motion to seal (DE # 43) is DENIED in remaining part. The clerk of court is DIRECTED to unseal docket entry 40-16. Finally, the parties are DIRECTED to file a joint status report contemplating the scheduling of remaining case activities, also including utility of any further mediation within fourteen (14) days of entry of this order. Said report also should include, among other things, the estimated length of trial and proposed term(s)

15

for trial.

SO ORDERED, this the 26 day of March, 2013.

                                                  LOUISE W. FLANAGAN
                                                  United States District Court Judge